Our next case is DEBATTO v. United States Mr. Eisenberg, you may proceed. Your Honor, if it will please the Court, I would like to reserve five minutes of rebuttal. Certainly, go ahead. Thank you. Your Honor, the Court below simply erred as a matter of law, saying that it did not have jurisdiction in this case. It had jurisdiction in this case for a variety of reasons. One, including the veteran's inability to appreciate and understand his legal rights during his time in service, and assumed thereafter. Also, he's sexual limitations has been told due to the SACRA service members, civil, I mean, I forgot the correct acronym. Yes, all right. Simply put, the... What does he get if he wins here? What's at stake here? What he's looking for is a military medical retirement versus a military medical disability. And there's a fine distinction between the two. If a service member receives a military medical disability, that is, if his disabilities or his medical conditions are under 30% based on the Vassar date, he gets a one-time check calculated by the time that he's been in the service and some complicated mathematical formula that I couldn't probably tell you right now, versus if it's above 30%, he gets a check per month for the rest of his life from the military, but it's not just money that he gets. He gets recognition that he's been wounded in service. He also gets access to his military ID card, which gives him access to privileges on the base, privileges going to the movie theater, privileges when he shows and talks to his friends. Further, he gets access to TRICARE, TRICARE, the military's medical insurance company, which many veterans find to be a lot better than what they get from the VA. So there are many important reasons why he wants to do this. And granted, VA benefits in general can offset a military medical retirement or even a military medical separation, but the ultimate goal isn't always money. And in some cases, I'd say outside this case, when you're fighting a process with the military, when you're fighting a process with the VA, you sometimes have to do the horse race and see who comes in first, to see who gets the higher disability rating sooner, so they can be paid the monies that they're entitled to. Well now, you're going to talk to us about the difference between what the Veterans Administration saw as your disability rating, as opposed to this separation. Disability rating. Disability rating. Absolutely. But those are very different. The separation is, it's a different standard. They're looking as to whether you're fit for duty, and perhaps the biggest difference is the veterans system anticipates that a disability may worsen, and if it worsens, your rating can increase over time, as long as there is that service connection. But the separation time kind of sets in time whatever rating you received at the separation. Aren't those distinctions enough to kind of cast a question on whether or not we should compare the two? I would say in some cases yes, in many cases no. For instance, in this situation, we have a veteran who was concurrently seeing the military doctors and concurrently seeing the VA doctors at the same time. And again, you're absolutely correct in saying that the military's job is at the time to see if that gentleman or lady is fit for service, and if they find unfitting conditions, they use those conditions only to discharge or possibly retire the veteran. It sounds as though you're asking us to redetermine the facts. You would first characterize this as a jurisdictional decision by the Court of Federal Claims, but it really isn't. It's a decision on the merits. And based on the administrative record, the Court of Federal Claims found that there was nothing arbitrary and capricious about the determination. Now, if we're going back to where the military cited some evidence without conducting thorough testing, without looking at everything they had in front of them, including one doctor saying, hey, this guy needs to be before a BEB based on his mental illness, that... How do we know they didn't look at it? Because if the appellant was actually, if they actually considered something like that, they said, okay, this guy has psychological issues, we need to test further, automatically he'd be put on TDRL, Total Disability Retirement List, Temporary Duty Retirement List, he'd be given 50% disability rating, and he would be in that process for a couple of years. That didn't happen. That should have triggered right there and then his being placed on the TDRL. Instead, they got rid of him. And I respect that we look at this case in isolation. But if we look to other cases ongoing, we have a class action lawsuit saying the same thing. We have GAO reports saying the same thing. We have news articles saying the same thing, that the military has systematically been downgrading not only the disability rating period, but especially for PTSD, because they weren't ready to handle it. And it's a lot of money. You know, the military had no plans for this kind of casualty. There was no allegation in this case about systematic downgrading, right? It's been inferred. But, I mean, that's part of the problem. And we're only looking at this specific case here today. Didn't MEB actually do psychiatric testing on Mr. DiBato? Yes. Interestingly, they found nothing wrong with him. So at the time of his separation, there was no evidence of PTSD. Well, how do you have one doctor saying, yes, it's there, and then you have the MEB saying, no, it's not, and if I recall correctly from the record? I understand there's some dispute about the record. Didn't Mr. DiBato agree with the MEB finding? Well, if Mr. DiBato was of such mental health that he couldn't appreciate what he was doing, I'd say that's void. Further, you also have to understand the conditions he was under. The military claims that, yes, he was assigned a JAG officer. We will tell you there was no JAG officer assigned. Further, where he was being out-processed, it was, in his words, a living hell. He had to get out of it. He was under duress. These are all factual things that you're presenting to us. It's a little hard for us to find facts here in an appellate proceeding. Understood. The one statement that is clear is that he said, I agree with the Board's findings and recommendations. Correct? Is that correct? That is correct. He checked that form in order to allow himself to get out of the barracks where he was staying, which was a disaster, a nightmare. Imagine putting yourself in those shoes and suffering from mental duress, suffering from PTSD. You're in hell. You need to get out. We're in no position to evaluate any of that. Correct. But if you look specifically to the law, and you compare the VA diagnosis, which were concurrent at the same time as the military's was going on. Well, not exactly the same time. But pretty darn close. There were psychological tests that took place about a year later? I believe some occurred during his out-processing and some occurred later. As much as a year later. But ultimately, he was granted. And he was ultimately provided VA benefits starting from his date of discharge because that process, similar to the military's process, takes time to sometimes cut her through to get it right. The VA determined fibromyalgia at 10% initially. That's correct. And the Army evaluated it at 20%. So if anything, the Army did him one better. Granted that the VA later increased the rating to, what, 40%? I believe that's correct. But that was a later determination at a later time based on whatever facts had been brought to bear. If I may, if I recall correctly, that 40% you're referring to was retroactive to the day he got out, the day after he got out of the military. And that may be true, but it was based on the determinations made from a record that was different from the record that was before the Army. Correct? But the record that was before the Army was incomplete. The military has the same duty with the VA to share records. And any of the VA records that were before him, which apparently weren't precise because they had to be corrected later, weren't before the military at that time. And if I recall correctly, there is one doctor in the record that specifically states this is the worst case of fibromyalgia I've ever seen. That doctor was before the military. Unfortunately, it sends a very bad message to the public when you allow the military to pick the good document that will allow them to lowball the military disability rating and then let the VA take care of it because it sends a message to everyone that the military is not taking care of the young men and women who go in harm's way to defend our freedom. Do you want to save the rest of your time there, Mr. Eisenberg? Yes, Your Honor. Thank you. Let's hear from Ms. Rose. Good morning, Your Honor. May it please the Court. In this case, Mr. Dabato's challenge to his disability rating from the Army is promised solely upon his VA determinations. As the Court has noted, the VA did make two disability determinations. And as the Court found, the VA's original testing actually supports the Army's determination that he was entitled to a disability rating of 20% for fibromyalgia only. I'd like to first address fibromyalgia and then move to PTSD. For fibromyalgia, the record supports that Mr. Dabato was entitled to 20% rather than 40%. Under the Bowser D, 40% is applied only where the symptoms are constant and refractory to therapy. Mr. Eisenberg says that the VA had some records that subsequently resulted in a 40% rating, and they didn't share it with the Army. Is that correct? The timeline here is that Mr. Dabato's PEB process was happening at the Army in March of 2004. The VA's original testing for fibromyalgia was in May of 2004, and that was the 10% rating after Mr. Dabato had received his 20% rating from the Army. The subsequent 40% rating was not until he was tested again for fibromyalgia in February of 2005. Were the records used in 2005 in existence in 2004? They were not. The Army's decision was based solely upon the records that it had before it. Mr. Dabato's challenge to his determination was made for the first time in the Court of Federal Claims. Well, I know the Army's decision was based on what was before the Army in 2004. What I'm getting at is the point that Mr. Eisenberg raised, and I'm trying to see whether you accept that or not. He seems to think that whatever evidence was in existence before the VA in 2005 was also in existence in 2004 and should have been shared with the Army so that the Army could have made a higher determination at that time. I think that's what he's arguing. No, I don't think that the 2005 exam indicates that there was any evidence that should have been before the Army in 2004. The VA, when it rated Mr. Dabato at 40%, although it did make the rating retroactive, it said that it was because his condition had worsened. Retroactivity doesn't mean that the VA considered that his fibromyalgia as of 2004 when Mr. Dabato was separated from active duty and went through the Army's physical disability process was 40%. It simply means that because his condition had worsened over time, the VA was rating him at 40%, and that decision was retroactive to the separation date. Ms. Rose, taking these documents at face value, his condition must have worsened very significantly and very quickly, both for the fibromyalgia and the PTSD. Have you got any medical evidence to support that kind of swift onset of PTSD and swift worsening of fibromyalgia? There are no records about PTSD in the Army's record because it gave Mr. Dabato psychological testing and found that he did not have any psychological conditions. The VA actually also tested Mr. Dabato shortly afterwards in May of 2004, and in their original VA determination, he was not rated for PTSD then either. So that's consistent with the Army's determination. You're kind of repeating the facts. I'm asking you if you can substantiate independently those facts. Is there any medical evidence that would support this kind of swift onset or swift worsening of these conditions? There is nothing in the record that speaks to that. The record really contains only the mention of the psychological testing, but the psychological testing records themselves were not forwarded to the PEV because he was not considered to have any psychological determination. So the only reference in the records to his psychological analysis are in the NEB's narrative summaries and attached notes that say that he received the testing and his diagnosis was normal. Mr. Eisenberg suggests that he may have checked that box accepting the psychological results and the other results because he was under psychological distress. Should we take that into consideration? Well, he did receive psychological testing from the Army that found that he did not have any psychological testing at the time. The Army's military officials are presumed to carry out their duties in good faith, and there's no indication here that his testing was inadequate. I would have thought the answer to that question is that the decision of the Court of Federal Claims doesn't rest on any notion of waiver. In fact, that is correct. The Court of Federal Claims bypassed the waiver argument and considered PTSD on the merits. Anything further, Ms. Rose? No, there's nothing further for the Court. The government asks that the reasons outlined in the brief that were submitted to the Court of Federal Claims. Thank you, Ms. Rose. Mr. Eisenberg, you have four and a half minutes. Thank you, Your Honor. I think you hit on it earlier in your brief with the opposing counsel that the condition hadn't settled, and the military under its regulations is not supposed to discharge someone by separation or by retirement if the condition hasn't settled. That's what TDRL is for. And as I mentioned before, they automatically have the 50% for the PTSD and then add on another 10% and their calculations still give you 60%. Well, that's over 30%. I'm sure their bean counters are a little bit concerned about that. Doesn't TDRL require a threshold showing of some sort, like a 30% rating? Yes, sir. Something of that sort? Yes, sir, and if you're given PTSD under the regulations, if you're diagnosed to believe to have PTSD, you automatically get 50%. You meet that threshold, and therefore you can't have it put on TDRL. But he didn't meet the threshold here. Well, he didn't meet the threshold based on the numbers that they calculated out at the time. But when you assert that, one, the fibromyalgia should have been 40%, he would have met it there individually. If you assert that he had PTSD at the time, he would have met the threshold there. Opposing counsel, I think, misstated the record. The record doesn't say that. The record says that one condition was nonexistent and the other condition was below the threshold. So why would they have even considered TDRL? Well, specifically, the record does show that a major, I forgot the name off the top of my head, diagnosed him with mental illness, and I believe PTSD, and that he needed to be forwarded to the PEB. And they came up with their testing, which I don't see the results of any objective testing in there from the MEB, unless I missed it, saying that he doesn't have PTSD. And it becomes awfully circumspect, given that suddenly he has PTSD, then he doesn't. Oh, guess what? Now the VA records say that he does. And the timing is too close. We're not talking about someone who served in Vietnam, was exposed to Agent Orange, and 20 years later developed the type of cancer that would be deemed service-connected. We're talking about someone who immediately after discharge was soon given a higher rating relating back to his date of discharge for fibromyalgia and then determined for the PTSD. If you're asking a veteran to say, hey, I have mental issues, well, you can't do that from someone who has mental health problems. And I dare say that the testing at the time was inaccurate. And further, not only should the VA and the military, their records, that the military should be seeking out the VA records, concur in subsequent. You see, as I think you hinted to earlier, that there was an immediately progressive problem, that his conditions got worse, not over 20 years, not over 10, not even over 5, like that. I think this Court has the power and responsibility to send this case back down and have the lower court look and consider it with the VA evidence, which, heart-heartedly, it didn't really articulate in this decision. Any other questions, Your Honor? I'll be happy to intervene. Thank you, Mr. Eisenberg.